Filed 1/31/14  Plata v. Darbun Enterprises CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAVIER TENORIO PLATA, et al., | D062517 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00059024-CU-MC-NC) |
| DARBUN ENTERPRISES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Thomas P. Nugent, Judge.  Reversed.

Stillman & Associates and Philip H. Stillman for Plaintiffs and Appellants.

Squires, Sherman & Bioteau and Bruce Sherman for Defendant and Respondent.

Eighteen individuals (plaintiffs) filed a superior court complaint against Darbun Enterprises, Inc. (Darbun) seeking recognition of a 2004 Mexican judgment that was renewed in July 2008.  The court sustained Darbun's demurrer without leave to amend on the ground that the Mexican judgment is a "penalty" and thus not enforceable under

California's Uniform Foreign-Country Money Judgments Recognition Act ("Foreign-Country Judgments Act" or "Act"). (Code Civ. Proc., § 1713 et seq.)[1]

The Foreign-Country Judgments Act does not permit enforcement of a foreign judgment "to the extent" the judgment is a "fine or other penalty." (§ 1715, subd. (b)(2).) We determine the court erred in ruling at the pleadings stage that the entire Mexican judgment is a "penalty" as a matter of law and thus unenforceable in California. Although a substantial portion of the Mexican judgment constitutes a penalty, plaintiffs have pled sufficient facts to overcome the Act's enforcement bar with respect to the remaining portions of the judgment. Accordingly, we reverse.[2]

FACTUAL AND PROCEDURAL BACKGROUND

In reviewing the court's ruling sustaining the demurrer, we are limited to considering facts alleged in the complaint and the attached incorporated documents. (See *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) In its respondent's brief, Darbun discusses numerous facts that are beyond the scope of the complaint and are unsupported by any citation to the appellate record. Under settled rules, we disregard these unsupported factual assertions. (See *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

[2] Plaintiffs also sued another party to the underlying judgment, but this defendant is not a party to the appeal. We thus omit further references to this party.

*Complaint*

Plaintiffs' complaint alleges the following.  Plaintiffs were employees of Soluciones Tecnologicas de Mexico, S.A. de C.V. (Soluciones).  Darbun was part of a production unit responsible for paying wages to Soluciones employees.  After plaintiffs were not paid their wages due, they "commenced an action" before a Mexican governmental entity known as the "Labor Relations Board."[3]  Plaintiffs filed this claim on May 31, 2000 and sought "back wages."

Darbun was notified of the action by the Mexican Consulate General and allegedly appeared and defended the action through its counsel.  Darbun's counsel presented evidence at several hearings before the Labor Relations Board.  In January 2002, the Labor Relations Board held a hearing "where Darbun's attorneys . . . appeared on behalf of Darbun and presented written answers to questions . . . by the Labor Relations Board . . . ."

Two and one-half years later, in August 2004, the Labor Relations Board entered a judgment against Darbun in plaintiffs' favor.  Plaintiffs attached to their complaint a copy of the 44-page Mexican judgment and an English translation of this judgment.

In the Mexican judgment, the Labor Relations Board found "plaintiffs proved their claims [at] trial," and awarded monetary amounts to each plaintiff.  The translated judgment states that Darbun and others were responsible for the "rescission" of plaintiffs' employment on May 9, 2000 after the plaintiffs were informed that "starting on April 28,

---

3    Plaintiffs identify this board as the "Number One Special Local [Labor Relations] and Conciliation and Arbitrage Local Authority of the City of Tijuana."

3

[2000] [their] salaries would not be paid."  Although the judgment awards various forms of monetary relief to plaintiffs, the precise nature and amount of these damages are not entirely clear.  But viewing the translated Mexican judgment in the light most favorable to plaintiffs, the amounts Darbun was required to pay to each plaintiff included:  (1) 20 days' salary for each year worked; (2) three months' salary; (3) vacation pay for the years 1998, 1999 and a portion of vacation payment for the year 2000; (4) a vacation pay bonus; (5) a seniority bonus; (6) payment equal to 30 days of each plaintiff's last salary; and (7) payment of all unpaid salaries starting on May 9, 2000 until the day the judgment is paid.

With respect to the last category above, plaintiffs alleged:  "Under Mexican Labor Code, an employee is not deemed to have been effectively terminated until the employee has been paid all back wages, sick pay and vacation pay.  Accordingly, payroll continues to accrue under Mexican law until the [judgment] is paid.  Thus, the [judgment] continues to grow at the rate of $16,996.12 Mexican pesos per day, representing the per diem wages for each of the plaintiffs until such judgment is paid in full."

Plaintiffs renewed the judgment in July 2008.  In 2010, Darbun challenged the validity of the Mexican judgment in the Mexican court system, "claiming the statute of limitations had run on the judgment due to an alleged 'conspiracy' between the plaintiffs and the Mexican Labor Relations Board. . . ."  Plaintiffs allege that this challenge was rejected, and all appeals have been finally resolved in favor of plaintiffs and against Darbun.

4

Plaintiffs first sought to enforce the Mexican judgment in this country by filing an action in federal court, but that action was dismissed after the grounds for diversity jurisdiction were eliminated. (See *Plata v. Darbun Enterprises, Inc.* (S.D. Cal. 2011) 2011 WL 98405, p. *1.) Several months later, in October 2011, plaintiffs filed their superior court complaint alleging a single cause of action under the Foreign-Country Judgments Act. Plaintiffs alleged the Mexican judgment "grants a sum of money" and is "final, conclusive and enforceable" under Mexican law, and the judgment satisfies all statutory criteria, including that the Mexican court had personal jurisdiction over Darbun, the proceeding was before a "fair tribunal," and Darbun appeared with legal counsel and presented evidence in its defense. According to plaintiffs, the amount of the Mexican judgment (including the per diem charge) as of October 1, 2011 is $58,333,994.17 Mexican pesos, and in United States dollars that amount is approximately $4.2 million.

*Demurrer*

Darbun filed a demurrer on the sole ground that "the judgment shows on its face that it is for a penalty and therefore cannot be recognized under California law." Darbun acknowledged that the Mexican judgment indicates Darbun was legally responsible for the "rescission" of plaintiffs' employment and that plaintiffs were unpaid for work performed from April 28, 2000 to May 9, 2000. But Darbun claimed the Labor Relations Board "did not find that Plaintiffs were owed any 'back wages' " and "did not award a single peso for work performed by Plaintiffs for which they were not paid." Darbun also asserted that the bulk of the monetary award serves only to penalize it for failing to pay the judgment.

5

In support, Darbun submitted copies of several translated Mexican statutes. Of relevance, these statutes: (1) state a wrongfully terminated worker is entitled to be reinstated or "be given severance pay in the amount of three months of wages"; (2) set forth the amount and circumstances under which a worker is entitled to vacation pay and bonuses; and (3) state that if the employer does not prove the cause of termination at trial, the employee "shall be entitled, additionally, regardless of what the attempted action had been, to be paid the due wages from the date of termination *until the time the judgment is fulfilled*." (Italics added.) Darbun cited to Mexican Amended Federal Labor Law sections 48, 49, 50, 76, 80, 87.

In opposition, plaintiffs argued that their pleadings show they sought and recovered compensatory damages, and not merely "penalt[ies]." They relied on their allegations that in the underlying Mexican action they sought " 'back wages' due upon termination . . . .' " They also identified portions of the Mexican judgment that "set forth seniority bonuses, lunch breaks, vacation pay, sick pay, and unpaid profit sharing required by the terms of employment that was required to be paid but was not." They further noted that the Mexican judgment "recites that the plaintiffs worked from April 28 through May 9 without being paid." Plaintiffs thus urged the court to overrule the demurrer because "at least a part of the judgment compensates" them for unpaid actual wages and other losses resulting from Darbun's improper conduct.

After a hearing, the court sustained the demurrer without leave to amend, concluding that "as a matter of law . . . the judgment constitutes an unenforceable penalty under" California's Foreign-Country Judgments Act.

6

DISCUSSION

## I. *Review Standard*

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the "reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We apply a de novo standard in reviewing the court's ruling sustaining the demurrer. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)

## II. *California's Foreign-Country Judgments Act*

Foreign country money judgments are enforceable in California if they meet the requirements of the Foreign-Country Judgments Act. (§ 1716, subd. (a).) The Act applies to all actions filed on or after January 1, 2008, and was modeled on the 2005 Uniform Foreign–Country Money Judgments Recognition Act (2005 Uniform Act). (See *Manco Contracting Co. (W.L.L.) v. Bezdikian* (2008) 45 Cal.4th 192, 198 (*Manco Contracting*); *In re Marriage of Lyustiger* (2009) 177 Cal.App.4th 1367, 1369-1370.) In

7

2007, the Legislature enacted the Foreign-Country Judgments Act to replace a prior uniform act. (See *Manco Contracting, supra*, at p. 204; *Lyustiger, supra*, at p. 1370.)

A party seeking recognition of a foreign judgment under the Act must file a civil action, and the procedures applicable to any civil action apply, including the need to prove disputed factual allegations at a trial. (*Hyundai Securities Co., Ltd. v. Lee* (2013) 215 Cal.App.4th 682, 689-690.) The fact that a foreign judgment is based on laws different from, or in conflict with, California law is not a basis for refusing to enforce the foreign judgment. (*Java Oil Ltd. v. Sullivan* (2008) 168 Cal.App.4th 1178, 1192 (*Java Oil*.) The purpose of the foreign-judgment enforcement statutes "is to codify the most prevalent common law rules for recognizing foreign money judgments and thereby encourage the reciprocal recognition of United States judgments in other countries. [Citation.] . . . Drafters of the uniform act believed codification of uniform rules would satisfy foreign reciprocity concerns and encourage greater recognition and enforcement of American judgments abroad. [Citations.]" (*Manco Contracting, supra*, 45 Cal.4th at p. 198.)

Under the Foreign-Country Judgments Act, a court "shall recognize a foreign-country judgment to which this chapter applies." (§ 1716, subd. (a).) Section 1715 provides that the chapter applies to all foreign money judgments that are "final, conclusive, and enforceable," except for three categories of excluded judgments. (§ 1715, subds. (a), (b).) On these three categories, the Act states: "This chapter does not apply to a foreign-country judgment . . . to the extent that the judgment is any of the

8

following: [¶] (1) A judgment for taxes. [¶] (2) A fine or other penalty. [¶] (3) [A judgment pertaining to divorce, support, or maintenance]." (§ 1715, subd. (b).)

A party seeking to enforce a foreign judgment has the burden to show the chapter applies to the judgment, including that the judgment does not fall within the excluded categories. (§ 1715, subd. (c).) Once that burden is met, the presumption in favor of enforcement applies, and the burden shifts to the opposing party to show a mandatory or discretionary ground for nonrecognition under section 1716. (§ 1716, subd. (d).) These nonrecognition grounds include that the judgment was not rendered before an impartial tribunal, the foreign tribunal had no personal or subject matter jurisdiction, the judgment was obtained by fraud, and the judgment is "repugnant" to a state or federal public policy. (§ 1716, subds. (b), (c).)

The only issue before us is whether the Mexican judgment is an excluded judgment because it is a "fine or other penalty." (§ 1715, subd. (b)(2).) A California Court of Appeal recently provided guidance on the meaning of a "penalty" under the foreign judgment enforcement statutes.[4] (*Java Oil, supra*, 168 Cal.App.4th at pp. 1186-1189.) The *Java Oil* court explained that a "penalty" under these statutes has a particular meaning " 'in the international sense' " and this meaning was established long ago by the United States Supreme Court in *Huntington v. Attrill* (1892) 146 U.S. 657, 673-674 (*Huntington*). (*Java Oil, supra*, at p. 1187.) Quoting *Huntington,* the *Java Oil* court

---

[4] Although *Java Oil* interpreted the former act's penalty provision, the penalty provision in both statutes is similar and it appears no change in meaning was intended. (See former § 1713.1, subd. (2).)

9

stated the question whether a statute is a " 'penal law . . . so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act.' " (*Java Oil, supra*, at p. 1187.) " 'The test is . . . whether . . . [the judgment's] essential character and effect . . . [is] a punishment of an offence against the public, or a grant of a civil right to a private person.' " (*Ibid.*) Thus, " ' "[a] statute is penal . . . [if it] awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. . . . The purpose must be not reparation to one aggrieved, but vindication of the public justice." ' " (*Ibid.*)

The *Java Oil* court noted that the *Huntington* test has been followed by the California Supreme Court (*Miller v. Municipal Court* (1943) 22 Cal.2d 818, 837)[5], and that "treble damages, double damages, and minimum fines [have been] considered penalties" in California. (*Java Oil, supra*, 168 Cal.App.4th at pp. 1187-1188.) The *Java Oil* court additionally discussed the Restatement definition and found it similar to the *Huntington* definition. (*Java Oil, supra*, at p. 1188; see Rest.3d Foreign Relations Law of the U.S., § 483, com. b, p. 611.) Applying these definitions, the *Java Oil* court held that attorney fee awards in two Gibraltar money judgments were not penalties under the

---

5    *Miller* is not directly applicable because it did not arise in the context of a foreign-country judgment.

10

foreign judgment enforcement statutes. (*Java Oil, supra*, 168 Cal.App.4th at pp. 1188-1189.)

*Java Oil*'s analysis is consistent with the understanding of the drafters of the 2005 Uniform Act, which was adopted in full by the California Legislature. In their comments to this model uniform act, the drafters stated: "Courts generally hold that the test for whether a judgment is a fine or penalty is determined by whether its purpose is remedial in nature, with its benefits accruing to private individuals, or it is penal in nature, punishing an offense against public justice." (Official Comments on U. Foreign-Country Money Judgments Recognition Act (2005 ed.) foll. § 3, p. 7, com. 4.)[6]

Accordingly, the issue whether a monetary award is a penalty within the meaning of the Foreign-Country Judgments Act requires a court to focus on the legislative purpose of the law underlying the foreign judgment. A judgment is a penalty even if it awards monetary damages to a private individual if the judgment seeks to redress a public wrong and vindicate the public justice, as opposed to affording a private remedy to a person injured by the wrongful act.

### III. *Analysis*

Applying the forgoing legal principles, we agree with the trial court that the portion of the judgment that requires Darbun to pay each worker's daily wages from the

---

[6] On our own motion, we take judicial notice of the prefatory note and comments by the National Conference of Commissioners on Uniform State Laws regarding the 2005 Uniform Act. This authority is available at <http://www.uniformlaws.org/shared/docs/foreign%20country%20money%20judgments%20recognition/ufcmjra_final_05.pdf> (as of Jan. 29, 2014).

11

date of their improper termination *until Darbun pays the judgment* is a "penalty" under section 1715, subdivision (b)(2). Although these amounts are to be paid to the workers, rather than the state, these amounts cannot be reasonably interpreted to be remedial under any sense of the word, i.e., intended as compensation to the workers for lost wages or other employment benefits. Instead, this award seeks to vindicate the public justice and constitutes a punishment (a fine or penalty) for Darbun's failure to comply with the Labor Relations Board mandates. The portion of the judgment in which Darbun must continue to pay plaintiffs' salaries, infinitely accruing at a daily rate, can only be reasonably interpreted as a fine or penalty for nonpayment of the amounts ordered. (See Lab. Code, § 203 ["penalty" imposed for willful failure to pay wages].)

We reject plaintiffs' argument that this portion of the judgment is not a penalty because "lost future wages" can be a component of compensatory economic damages under California law. (See *Helmer v. Bingham Toyota Isuzu* (2005) 129 Cal.App.4th 1121, 1129-1131.) In *Helmer*, the court held an employee was entitled to recover future lost income damages on a promissory fraud claim because these damages "may properly be considered as part of the 'benefit of the bargain.' " (*Id.* at p. 1130.) The court explained that the defendant "employer 'bargained' to obtain an employee who already had steady employment with another company. It is only fair to compensate the employee for the damages he suffered as a result of leaving that steady employment." (*Id.* at pp. 1130-1131.)

Even assuming we look to California law on this issue, *Helmer* is inapposite. Darbun was ordered to pay the daily wages of the workers until it fully satisfied the

12

Mexican judgment without any reference or proof of each worker's individual situation or future losses. This monetary award was ordered under Mexican law that permits the imposition of these monetary amounts until a judgment is satisfied regardless of the employee's situation. Thus, in this case, there is no basis for finding the monetary award was to compensate plaintiffs for "lost future wages" or as part of the "benefit of the bargain." Unlike *Helmer*, there were no facts showing a relationship between this monetary award and plaintiffs' losses to indicate the amounts were intended as a private remedy.

However, we agree with plaintiffs that they have alleged sufficient facts showing at least a portion of the judgment was intended to be compensation for lost wages and benefits, rather than a penalty to vindicate " 'the public justice.' " (*Java Oil, supra*, 168 Cal.App.4th at p. 1187.) The complaint's allegations, together with the attached Mexican judgment, support that Darbun was ordered to pay various amounts to compensate plaintiffs for its responsibility in causing the "rescission" of the employment "relationship," including vacation pay, holiday pay, and vacation and seniority bonuses. Some of these awarded amounts were calculated based on each plaintiff's seniority and some were awarded based on the provisions of the plaintiffs' employment contracts. These alleged facts support that the amounts awarded were intended to compensate plaintiffs for damages suffered, rather than as a penalty unrelated to compensation and for the purpose of punishment. Although it appears that the plaintiffs suffered unpaid monetary wages for only a very brief period, the Mexican judgment does not necessarily support that these were the only benefits allegedly lost as a result of Darbun's claimed

13

wrongful conduct. (See *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4th 1595, 1600-1601 [vested vacation time is a form of wage]; *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1376 [bonuses earned by an employee may constitute wages].)

Darbun argues that even assuming a portion of the Mexican judgment constitutes compensation rather than a penalty, a California court may not enforce a foreign judgment if any part of the judgment is a penalty. This argument is unsupported.

Section 1715, subdivision (b)(2) provides: "This chapter does not apply to a foreign-country judgment, even if the judgment grants or denies recovery of a sum of money, *to the extent* that the judgment is any of the following: [¶] . . . [¶] . . . A fine or other penalty." (Italics added.) The phrase "to the extent" plainly suggests that the bar on enforcing judgments applies only to the portion of the judgment constituting a prohibited category. Darbun contends this interpretation would be appropriate solely if the drafters had used the phrase "*only* to the extent that." This argument is unsound.

The word "extent" refers to "the range over which something extends" (Webster's 11th Collegiate Dict. (2006) p. 443), and the phrase "to the extent" has a similar limiting connotation, i.e., applying only to the particular identified subject matter. (See *In re Sprint Corp. ERISA Litigation* (D.Kan. 2004) 388 F.Supp.2d 1207, 1218-1219; *In re Duvall* (Bankr. W.D.Tx. 2002) 218 B.R. 1008, 1016.) Thus, contrary to Darbun's contention, it is unnecessary to add the word "only" to convey an intent to provide a limited application. Under its plain meaning, the phrase "to the extent" in section 1715, subdivision (b) refers to the limited scope of the statutory exceptions, and establishes that

14

a foreign judgment can be partially enforced with respect to compensatory damages that do not constitute a penalty or fine.

The drafters' comments to the 2005 Uniform Act support this interpretation. In the comments following the exception categories (such as the fine/penalty exception), the drafters stated: "[A] foreign-country money judgment is not within the scope of this Act '*to the extent*' that it comes within one of the excluded categories. Therefore, if a foreign-country money judgment is only partially within one of the excluded categories, *the non-excluded portion will be subject to this Act*." (Official Comments on U. Foreign-Country Money Judgments Recognition Act, *supra*, foll. § 3, p. 7, com. 5, italics added.) Because the California Legislature adopted the same "to the extent" language without modification and because a primary purpose of adopting the 2005 Uniform Act was to ensure and promote uniformity of the foreign judgment enforcement law "among states that enact it," we necessarily presume the California Legislature had the same intent. (§ 1722.)

This conclusion also comports with common sense. Assume two judgments each award the same amount of compensatory damages but one additionally awards a penalty. Under Darbun's proposed interpretation, the compensatory-only judgment could be fully enforced whereas the judgment awarding the same compensatory damages *and* a separate penalty could not be enforced. In this scenario, a plaintiff would not be entitled to enforce a judgment merely by virtue of having established more egregious behavior that warranted a penalty *in addition to compensatory damages.* We cannot conclude the California Legislature would have intended this result.

15

Darbun contends a court cannot partially enforce a foreign country judgment because a court's authority under the Act is limited to issuing a single order enforcing the judgment or not enforcing the judgment. In support, Darbun cites section 1719 which provides that if a foreign-country judgment is entitled to recognition, it is generally "[e]nforceable in the same manner and to the same extent as a judgment rendered in this state." In light of the more direct language contained in section 1715, subdivision (b) and the explicit legislative history disclosing the drafters' intent to permit partial enforcement, we find Darbun's reliance on section 1719 to be unpersuasive.

IV. *Federal Court Proceedings*

Because both parties discuss the earlier federal court litigation, and attempt to use various federal court rulings to their advantage, we briefly summarize this litigation and then explain our conclusion that the federal court rulings—while informative—are not binding on this court.

Plaintiffs initially filed their enforcement action against Darbun in federal court based on diversity jurisdiction arising from plaintiffs' Mexican nationalities. (*Plata v. Darbun Enterprises, Inc.* (S.D.Cal. 2009) 2009 WL 975233.) Darbun then moved to dismiss the complaint on various grounds, including that the judgment was an unenforceable "penalty" under California's Foreign-Country Judgments Act. (*Plata, supra*, 2009 WL 975233.) The district court rejected the claim at the pleadings stage. (*Ibid.*) The district court held: "In order to prevail at this stage of the proceedings, Defendant must demonstrate based upon the pleadings and matters properly before the Court that every part of the Mexican Judgment constitutes a 'penalty' which is

16

unenforceable under [section] 1715(b)(2). At this stage of the proceedings, the Court finds there are factual questions regarding the nature of the Judgment which precludes dismissal of the case . . . ." (*Ibid.*)

Several months later, the federal court denied plaintiffs' motion to attach Darbun's corporate property, finding plaintiffs did not submit sufficient facts establishing " 'the probable validity' " of their claim. (*Plata v. Darbun Enterprises, Inc.* (S.D.Cal. 2009) 2009 WL 3153747, p. *4; see § 484.090.) In so ruling, the court stated: "Given the lack of information regarding the nature of the Mexican Judgment, the court cannot determine as a matter of law whether the damages constitute a penalty. Crucially, it is unclear whether the Judgment served to punish Defendant or to compensate Plaintiff for harm incurred." (*Ibid.*) However, the court additionally discussed that various portions of the judgment appear to award a penalty rather than compensation for lost wages, particularly the portion of the judgment ordering that Darbun pay plaintiffs' salaries until it fully satisfies the entire judgment. (*Ibid.*)

Subsequently, the federal district court dismissed the federal action after learning that one of the 18 plaintiffs was a California resident and her presence in the action "destroyed diversity for jurisdictional purposes." (*Plata v. Darbun Enterprises, Inc.* (S.D.Cal. 2011) 2011 WL 98405, p. *1.) The court also rejected plaintiffs' later attempt to refile the action without including all necessary parties. (*Ibid.*)

Both parties rely on the collateral estoppel doctrine to argue for a preclusive effect as to certain of these rulings. This doctrine is inapplicable on the record before us. The court never reached a final ruling on the merits, and the issues in the federal litigation

17

were not identical to the issues in this case.  These missing elements preclude the

application of collateral estoppel in this case.  (See *Lucido v. Superior Court* (1990) 51

Cal.3d 335, 341; *Henderson v. Newport-Mesa Unified School Dist.* (2013) 214

Cal.App.4th 478, 503.)

## DISPOSITION

Judgment reversed.  The parties to bear their own costs on appeal.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


O'ROURKE, J.